Filed 10/13/20  P. v. Alsadi CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B300818 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA102742) |
| v. | |
| ABAA ALSADI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Suzette Clover, Judge.  Affirmed.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and J. Michael Lehmann, Deputy Attorney General for Plaintiff and Respondent.

# INTRODUCTION

Abaa Alsadi appeals from the judgment after a jury convicted him on five counts of robbery (Pen. Code, § 211)[1] and found true the allegations he personally used a firearm in committing four of the robberies, within the meaning of section 12022.53, subdivision (b). Alsadi argues the trial court had a sua sponte duty to instruct the jury on the "lesser included enhancement" of personal use of a deadly or dangerous weapon within the meaning of section 12022, subdivision (b), because "there was evidence sufficient to permit the jury to find that the gun was not [a] real" firearm. Alsadi also argues his trial counsel's failure to request that instruction or a pinpoint instruction constituted ineffective assistance. We conclude that the trial court did not have a sua sponte duty to instruct on lesser included enhancements and that Alsadi has not shown his trial counsel provided ineffective assistance. Therefore, we affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

A.    *Alsadi Commits a Series of Robberies*

On May 20, 2017 Alsadi entered a liquor store, approached the cashier, George Khalil, and "put a gun to" his chest. Alsadi took money from a drawer and left.

On May 23, 2017 Alsadi entered another liquor store as the cashier, Adeeb Wardeh, was preparing to close. Alsadi pointed a black gun at Wardeh's face, pushed him to the floor, and took money from the cash register before fleeing.

---

[1]    Statutory references are to the Penal Code.

Minutes later, Alsadi entered another liquor store and approached the cashier, Nelson Nolasco, while holding a black gun. Nolasco heard "a weapon being cocked back" as Alsadi circled the front counter. Alsadi pointed the gun at Nolasco's head and took cash from the register and two bottles of alcohol.

On May 26, 2017 Alsadi entered yet another liquor store. He approached the cashier, George Merrawi, pointed a gun at his face, told him to open the register, and took money and a carton of cigarettes.

On January 17, 2018 Alsadi returned to the liquor store he robbed on May 23, 2017. Alsadi ordered the store owner, Abdullah Aroush, to open the safe. Aroush complied because he believed Alsadi "was going to shoot" him. Aroush did not see a gun but believed Alsadi had one. Alsadi took money and ran out toward a getaway car. Aroush chased Alsadi, saw him get into the passenger side of the car, noted the car's license plate number, and called the police.

During a subsequent search of Alsadi's residence, police officers found clothing matching that of the robber, but they did not find a gun, nor were they able to discover whether a gun had ever been registered to Alsadi. Police arrested Alsadi one week later when they saw him driving the getaway car.

B.     *The Victims Testify at Trial, and the Trial Court Instructs the Jury*

The People charged Alsadi with five counts of robbery and alleged he personally used a firearm in the commission of each offense, within the meaning of section 12022.53, subdivision (b), served a prior prison term within the meaning of section 667.5, subdivision (b), and committed four of the offenses while released

3

from custody on bail, within the meaning of section 12022.1. The jury heard testimony from the victims and the investigating officers and viewed video surveillance footage and photographs from each robbery.

Khalil testified that the gun Alsadi pointed at his chest was dark-colored and "reflected light," but that he never touched it. Counsel for Alsadi asked Khalil whether he believed "the gun was real." Khalil stated that he only looked at it for "a second" and could not tell, but that he was "scared for [his] life."

Counsel for Alsadi asked Wardeh whether he had "any idea" if the gun Alsadi used "was a real gun or a fake gun." Wardeh responded, "How can I know?" Wardeh did not recall whether he touched the gun and stated he looked at it only briefly, but like Khalil, he said he was "scared" during the incident.

Nolasco, an ammunition specialist in the military, described the gun as a black "pistol" and its cocking sound as a "pop." Counsel for Alsadi asked Nolasco whether he touched the gun, whether he had "any idea" what material it was made of, and whether it had a magazine in it. Nolasco stated that the gun felt like metal when it touched his head and that the barrel of the gun "looked real." Nolasco also stated he feared for his safety during the robbery.

Aroush, who did not actually see a gun, said he believed Alsadi had one because Alsadi "had his hand in his pocket, there was something in his hand [and] the shape looked like a gun," and Alsadi "simulated holding a gun." Aroush stated that Alsadi told him not to look at his hands and that Alsadi began to count backward "like he was going to shoot" Aroush if he did not open the safe.

4

A police detective testified he reviewed video surveillance footage from each incident. He stated that he had experience handling guns but was "not a gun expert" and that, although the gun Alsadi used in the robberies appeared "real," he "could be wrong." Another police officer testified some fake guns are "quite convincing" and can appear "very realistic."

The trial court instructed the jury on the firearm use enhancement with CALCRIM No. 3146: "A firearm is any device designed to be used as a weapon, from which a projectile is discharged or expelled through a barrel by the force of an explosion or other form of combustion. [¶] A firearm does not need to be in working order if it was designed to shoot and appears capable of shooting. A firearm does not need to be loaded. [¶] Someone personally uses a firearm if he or she intentionally . . . [d]isplays the weapon in a menacing manner. . . . [¶] The People have the burden of proving each allegation beyond a reasonable doubt."

C.    *The Trial Court Denies Alsadi's Motion for Acquittal, and the Jury Convicts Him*

At the close of evidence and outside the presence of the jury, counsel for Alsadi made a motion for acquittal under section 1118.1, arguing there was no evidence the gun Alsadi used was "real or operational." Counsel argued that investigators never recovered the gun, that no witness was "able to make [a] determination" whether the gun was real, and that during one of the incidents the witness did not even see a gun. The trial court denied the motion, ruling there was "sufficient evidence" for the jury to decide the issue, particularly given that Nolasco, who had military training and knowledge of weapons, testified he believed

5

the gun was real.  The court also stated the gun "was the basis" of the victims' fear during the robberies.  The trial court asked counsel if they wanted to "request[ ] any instructions that were not previously given," and both declined.

During closing argument counsel for Alsadi told the jury: "There are some fake guns.  There's BB guns.  There's toy guns. There's all kinds of guns out there.  We don't know if this was a real gun or not."  He argued:  "The People here are asking you to guess, make this guess . . . .  If you have to guess . . . there's a doubt in your mind."

The jury convicted Alsadi on all five robbery counts.  The jury found that Alsadi personally used a firearm in committing four of the robberies, but not in committing the fifth (the robbery of Aroush).  Alsadi admitted the prior prison term and on-bail allegations, which the court later struck.  The trial court sentenced Alsadi to a prison term of 27 years, consisting of the middle term of three years for the robbery of Khalil, plus 10 years for the firearm use enhancement; one year (one-third the middle term) for the robbery of Nolasco, plus three years four months (one-third the middle term) for the firearm use enhancement; one year for the robbery of Wardeh, plus three years four months for the firearm use enhancement; one year for the robbery of Merrawi, plus three years four months for the firearm use enhancement; and one year for the robbery of Aroush.  Alsadi timely appealed.

# DISCUSSION

A. *The Trial Court Did Not Err in Failing To Instruct Sua Sponte on Personal Use of a Deadly or Dangerous Weapon as a Lesser Included Enhancement*

Alsadi argues the trial court, even without a request by counsel, should have instructed the jury on the enhancement for personal use of a deadly or dangerous weapon under section 12022, subdivision (b), because it is a lesser included enhancement of personal use of a firearm under section 12022.53, subdivision (b), and because "there was evidence sufficient to permit the jury to find the gun" was not a real firearm. He contends that a trial court's sua sponte duty to instruct on a lesser included offense when "there is substantial evidence the defendant is guilty of the lesser offense, but not the greater," extends to lesser included enhancements and that the trial court's failure to instruct on the deadly or dangerous weapon enhancement violated his "rights to due process of law and a fair trial." The law does not support Alsadi's argument.

Although a "trial court has a sua sponte duty to instruct the jury on any uncharged lesser offense that is necessarily included in a charged offense if there is substantial evidence from which the jury could reasonably conclude that the defendant committed the lesser included offense but not the charged offense" (*People v. Lopez* (2020) 9 Cal.5th 254, 269; see *People v. Vasquez* (2018) 30 Cal.App.5th 786, 792), "a trial court's sua sponte obligation to instruct on lesser included offenses does not encompass an obligation to instruct on 'lesser included enhancements'" (*People v. Majors* (1998) 18 Cal.4th 385, 411 (*Majors*)). (See *People v. Garcia* (2020) 46 Cal.App.5th 786, 792

7

["the sua sponte judicial duty to instruct on lesser included offenses" does not apply to lesser included enhancements], review granted June 10, 2020, S261772.) This is because "the risk the jury will convict on the charged offense even though one of the elements remains in doubt because '"the defendant is plainly guilty of *some* offense"'" (*Vasquez*, at p. 798) is not present when the jury considers sentence enhancements. (See *Majors*, at p. 410 [a "'sentence enhancement is not equivalent to a substantive offense, because a defendant is not at risk for punishment under an enhancement allegation until convicted of a related substantive offense'"]; *People v. Dennis* (1998) 17 Cal.4th 468, 500 [same].)

Recognizing *Majors* is controlling, Alsadi argues the United States Supreme Court in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348] "implicitly overruled" *Majors*. It did not. In *Apprendi* the United States Supreme Court held "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) The United States Supreme Court in *Apprendi* extended a defendant's right to a jury trial to sentencing enhancements, observing that a sentence enhancement is "the functional equivalent of an element of a greater offense." (*Id.* at p. 494, fn. 19.) The California Supreme Court, however, has "rejected the notion that the high court's 'functional equivalent' statement requires us to treat penalty allegations as if they were actual elements of offenses for all purposes under state law." (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 137; see *id.* at p. 138 ["'enhancements are not legal elements of the offenses to which they attach' under California law, and . . . *Apprendi* did not change this aspect of our

8

state law"]; *People v. Alarcon* (2012) 210 Cal.App.4th 432, 437-438 [same].)  Here, consistent with *Apprendi*, the trial court submitted the firearm use allegations to the jury, and the jury found them true beyond a reasonable doubt on four counts.  (See *People v. Izaguirre* (2007) 42 Cal.4th 126, 133 ["To the extent the firearm-related enhancements in question stood to increase *punishment*, *Apprendi*'s holding . . . requires only that they be tried to a jury and found true beyond a reasonable doubt, which they were."].)

In re A.L. (2015) 233 Cal.App.4th 496, *People v. Fialho* (2014) 229 Cal.App.4th 1389 (*Fialho*), and *People v. Dixon* (2007) 153 Cal.App.4th 985 (*Dixon*), all cited by Alsadi, are distinguishable.  None of them involved jury instructions, let alone whether a trial court has a sua sponte duty to instruct a jury on a lesser included enhancement.  Instead, these cases applied the general rule that trial courts have the authority to impose lesser included enhancements where "the original enhancement allegation [was] either factually unsupported," defective, or did "not apply to the offense of conviction under the applicable statutory provisions."  (*Fialho*, at pp. 1395-1396; see *ibid.* [the Supreme Court "has expressly permitted substitution of a charged enhancement with an uncharged enhancement that 'would be applicable in any case' in which the charged enhancement applies," and "Courts of Appeal have similarly approved the substitution of a charged enhancement with an uncharged "'lesser included enhancement'" when there is insufficient evidence to support the greater enhancement"].)

For example, in *In re A.L., supra,* 233 Cal.App.4th 496 the court held the juvenile court did not abuse its discretion in allowing the prosecutor to amend the petition to conform to proof

9

that a minor was armed with a firearm in the commission of a felony within the meaning of section 12022, subdivision (a)(1), rather than, as alleged in the petition, the minor personally used a deadly or dangerous weapon, within the meaning of section 12022, subdivision (b). (*In re A.L.*, at p. 504.) In *Fialho* the jury found true the allegation the defendant, in the course of committing voluntary manslaughter, personally and intentionally discharged a firearm proximately causing death or great bodily injury, within the meaning of section 12022.53, subdivision (d), even though that enhancement did not apply to voluntary manslaughter. (*Fialho*, *supra*, 229 Cal.App.4th at p. 1392.) The court in *Fialho* held the trial court "did not err by imposing a personal firearm use enhancement under former section 12022.5, subdivision (a) after determining that the section 12022.53, subdivision (d) enhancement found true by the jury did not apply to the offenses of which defendant was convicted. Former section 12022.5, subdivision (a) is an enhancement that 'would be applicable in any case' in which a section 12022.53, subdivision (d) enhancement applies." (*Fialho*, at pp. 1398-1399.) And in *Dixon* the trial court found the defendant personally used a deadly weapon, within the meaning of section 12022, subdivision (b), rather than personally used a firearm, within the meaning of section 12022.53, subdivision (b), as alleged. (*Dixon*, *supra*, 153 Cal.App.4th at p. 988.) The court in *Dixon* held that, because "section 12022, subdivision (b), is included within section 12022.53, subdivision (b), [the defendant] was adequately apprised that the prosecution was seeking to prove the elements which comprise a section 12022, subdivision (b), enhancement," and therefore "there was no lack of notice or due process violation." (*Dixon,* at p. 1002.)

Here, the firearm use allegations were not factually unsupported, defective, or inapplicable. The People alleged them, the court without objection properly instructed on them with CALCRIM No. 3146, the jury found them true, and substantial evidence supported those findings. The jury viewed video surveillance footage and photographs showing Alsadi committing each robbery. The jury heard the victims describe the gun Alsadi pointed at them ("dark," "black," "metal," "pistol") and recount the fear they felt. And the jury heard Nolasco testify that, based on his experience with weapons in the military, the weapon was a real firearm. (See *People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1437 ["when . . . a defendant commits a robbery by displaying an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm within the meaning of section 12022.53, subdivision (b)"].) That the witnesses could not conclusively state the gun was real does not mean substantial evidence did not support the jury's finding that it was. (See *People v. Aranda* (1965) 63 Cal.2d 518, 532 ["Testimony by witnesses who state that they saw what looked like a gun, even if they cannot identify the type or caliber, will suffice."], disapproved on another ground in *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 280, fn. 20; *People v. Law* (2011) 195 Cal.App.4th 976, 983 ["'Most often, circumstantial evidence alone is used to prove the object was a firearm . . . because when faced with what appears to be a gun, displayed with an explicit or implicit threat to use it, few victims have the composure and opportunity to closely examine the object; and in any event, victims often lack expertise to tell whether it is a real firearm.'"]; *Monjaras*, at p. 1438, fn. 1 ["Only

11

the most foolhardy victim would demand to be looking down the barrel before understanding that the robber who displays a gun intends to use it."].)

B.  *Counsel for Alsadi Did Not Provide Ineffective Assistance in Failing To Request an Instruction on Personal Use of a Deadly or Dangerous Weapon or a Pinpoint Instruction*

Alsadi argues that, if the trial court did not have a sua sponte duty to instruct the jury on the lesser included enhancement of personal use of a deadly or dangerous weapon, his trial counsel provided ineffective assistance by failing to request such an instruction. Alsadi also argues his trial counsel was ineffective in not requesting "a pinpoint instruction that an imitation or fake gun does not qualify as a firearm under . . . section 12022.53, subdivision (b)." Alsadi argues "[t]here could be no informed tactical reason for trial counsel's failure to request these instructions."

"To make out a claim that counsel rendered constitutionally ineffective assistance, 'the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.'" (*People v. Hoyt* (2020) 8 Cal.5th 892, 958.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986,

12

1009.)  On direct appeal, "a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding."  (*Id.* at p. 1009.)

We cannot say there can be no satisfactory explanation for counsel's decision not to request the two instructions Alsadi claims counsel should have requested.[2]  Trial counsel may have made the quite rational tactical decision that it was better to try to convince the jury the firearm allegations were not true because the gun was not a firearm, which would result in no enhancements, without providing the jury the additional option of finding that the gun, though not a firearm, was still a deadly or dangerous weapon, which would result in enhancements.  (See *People v. Arredondo* (2019) 8 Cal.5th 694, 711 [in evaluating a claim of ineffective assistance of counsel, "we 'defer[ ] to counsel's reasonable tactical decisions' and presume that 'counsel acted within the wide range of reasonable professional assistance'"].)  Indeed, such a strategy was successful for the firearm allegation on the fifth robbery, which the jury found not true.  (See *People v. Carrasco* (2014) 59 Cal.4th 924, 990 ["counsel may not have wanted an . . . instruction out of concern that it would distract the jury's attention from the totality of the evidence that could create a reasonable doubt"]; *People v. Bonilla* (2018)

---

[2]     Alsadi does not argue that the record affirmatively discloses trial counsel had no rational tactical purpose for not requesting the instructions or that his counsel was asked for and failed to give a reason for failing to do so.

29 Cal.App.5th 649, 657 ["[b]y leaving the jury to its own devices based on the existing instructions, defendants' counsel could have believed he was increasing defendants' chance of an acquittal or hung jury"].)

Regarding counsel's failure to request a pinpoint instruction stating that a fake gun is not a firearm, as mentioned the trial court instructed the jury that a firearm was a "device designed to be used as a weapon, from which a projectile is discharged or expelled through a barrel by the force of an explosion or other form of combustion." This instruction, which Alsadi does not challenge, gave counsel all he needed to argue that a fake gun was not a firearm and that if Alsadi's gun was fake the firearm allegations were not true. (See *People v. Lucero* (2000) 23 Cal.4th 692, 729-730 [defense counsel was not ineffective for failing to "request unnecessary and duplicative instructions" and "cannot be faulted for not requesting an instruction that would duplicate the one given by the court"]; *People v. Castillo* (1997) 16 Cal.4th 1009, 1018 [counsel was not ineffective in failing to request a pinpoint instruction where "competent counsel could reasonably conclude that the instructions adequately advised the jury" on the law]; see also *People v. Nguyen* (2015) 61 Cal.4th 1015, 1052 [no ineffective assistance where the "defendant fails to show that there could be no conceivable reason for trial counsel not to request . . . a clarifying instruction"].) For the same reason, Alsadi cannot show prejudice. (See *People v. Smithey* (1999) 20 Cal.4th 936, 987 [counsel's failure to request a pinpoint instruction did not prejudice the defendant where "the court fully apprised the jury of the law" and "no additional instruction was necessary"]; *People v. Alcala* (1992) 4 Cal.4th 742, 804-805 [counsel's failure to

14

request additional instructions was not ineffective assistance of counsel because, where "the instructions given adequately apprised the jury of all relevant legal principles, any failure by counsel clearly was not prejudicial"].)

## DISPOSITION

The judgment is affirmed.


SEGAL, J.

We concur:


PERLUSS, P. J.


FEUER, J.